ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| RAMONA ALTAGRACIA PIMENTEL RABELL Y JOSEFINA DELGADO RABELL Recurrido<br><br>v.<br><br>DIOLANDA PANTOJA RABELL Peticionario | KLAN202500399 | *Apelación* acogida como *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Número: SJ2020CV01662<br><br>Sobre: Liquidación de Comunidad de Bienes |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo

Rivera Marchand, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 23 de mayo de 2025.

Comparece la Sra. Diolanda Pantoja Rabell (señora Pantoja Rabell o peticionaria) mediante un escrito intitulado *Apelación*, que, tras evaluar su naturaleza legal, acogimos como un *certiorari*, y nos solicita que revoquemos una *Orden* emitida y notificada el 24 de abril de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario).[1] En el referido dictamen, el foro de instancia declaró "no ha lugar" una *Solicitud de Reconsideración* que presentó la peticionaria y mantuvo una *Orden* de Ejecución de Sentencia.

## I.

El presente caso tuvo su génesis el 24 de febrero de 2020, cuando la Sra. Ramona Altagracia Pimentel Rabell (señora Pimentel Rabell) y la Sra. Josefina Delgado Rabell (señora Delgado Rabell) (en conjunto, recurridas) instaron una *Demanda* de liquidación de comunidad de bienes en contra de la peticionaria.[2] En la antedicha

---

[1] Apéndice I de la *Apelación*, pág. 1.
[2] Apéndice V de la *Apelación*, págs. 10-14.

Número Identificador

RES2025_____

acción, adujeron que eran dueñas en común proindiviso con la señora Pantoja Rabell de una propiedad inmueble sita en San Juan.

Arguyeron que la adquisición de la propiedad se derivó de una donación hecha por la Sra. Diolanda Altagracia Rabell Casillas (señora Rabell Casillas), madre de ambas partes, mediante el otorgamiento de la Escritura Núm. 20, el 13 de junio de 2007, ante el notario Federico Montañez Delerme.

Además, sostuvieron que, desde que se efectuó la donación, la peticionaria residía la propiedad sin pagar renta y manifestando ser la única titular. De igual forma, que alquilaba varias unidades del inmueble sin compartir las rentas devengadas, en contravención de un acuerdo, por lo que les debía $124,800.00, computados a base de un valor rentable de la propiedad de $1,200.00. En adición, alegaron que la señora Pantoja Rabell se negaba a tener comunicación para acordar la división de la comunidad.

Consiguientemente, solicitaron al TPI la liquidación de la comunidad de bienes y la adjudicación del inmueble por partes iguales, así como la imposición de honorarios de abogado por concepto de temeridad.

El 11 de agosto de 2020, la peticionaria contestó la demanda.[3] En esencia, negó la falta de comunicación alegada y sostuvo que, conforme a un acuerdo entre las partes, las rentas devengadas del inmueble eran remitidas a la señora Rabell Casillas. Asimismo, arguyó que se había pactado un acuerdo de indivisión con esta para que las rentas producidas le fueran entregadas en vida. Adicionalmente, sostuvo que era de aplicación la figura de la prescripción adquisitiva toda vez que había vivido la propiedad desde el 2007 en concepto de dueña, de forma pública, pacífica, continua e ininterrumpidamente. Asimismo, esgrimió que había realizado mejoras a la propiedad.

---

[3] Apéndice VI de la *Apelación*, págs. 15-17.

El 24 de noviembre de 2020, las recurridas solicitaron que el foro *a quo* ordenara la tasación del inmueble y que esta fuera vinculante entre las partes.[4] Posteriormente, el 9 de marzo de 2021, el TPI celebró la *Conferencia Inicial.* Según surge de la *Minuta,* las recurridas expusieron que existía una controversia en cuanto a la valorización del inmueble, razón por la cual se había propuesto la contratación de un tasador.[5] Lo anterior fue ratificado por la peticionaria durante la vista.[6] Siendo así, el TPI le dictó a las partes, mediante *Orden* emitida y notificada el 15 de abril de 2021, que contrataran un tasador para que valorara la propiedad.

Así las cosas, el 2 de agosto de 2021, las partes presentaron el *Informe de Conferencia con Antelación a Juicio.*[7] Como parte de su teoría del caso, las recurridas hicieron referencia a que el valor de la tasación de la propiedad fue de $100,000.00. Por su parte, la peticionaria expuso que el inmueble había incrementado su valor en el mercado por mejoras realizadas. Sin embargo, estipuló la tasación de la propiedad.

No obstante, el 18 de abril de 2022, las partes presentaron una *Estipulación y Acuerdo de Transacción.*[8] Allí, estipularon que el precio de venta de la propiedad sería de $100,000.00; pero, en caso de que fuera por un precio menor, la cantidad se dividiría a base de este. Acordaron que la señora Pantoja Rabell adquiriría las participaciones de las recurridas dentro del término de noventa (90) días contado a partir de la fecha de la expedición de la sentencia.

De igual forma, pactaron que, en caso de que la peticionaria no cualificara para el financiamiento de la compraventa, la propiedad sería puesta a la venta y el producto de esta sería dividido entre las partes, según sus respectivas participaciones. Asimismo,

---

[4] Apéndice VII de la *Apelación,* pág. 18.
[5] Apéndice VIII de la *Apelación,* pág. 19.
[6] *Íd.*
[7] Apéndice X de la *Apelación,* págs. 22-26.
[8] Apéndice XIII de la *Apelación,* págs. 31-33.

renunciaron a cualquier acción presente y futura con relación al caso. Ese mismo día, el TPI dictó y notificó una *Sentencia* en la que acogió el acuerdo suscitado.[9]

Así las cosas, el 3 de abril de 2024, las recurridas presentaron una *Moción en Solicitud de Ejecución de Sentencia*.[10] Allí, esbozaron que la señora Pantoja Rabell no había cumplido con el acuerdo transaccional e impedía que la propiedad fuera vendida a un tercero, por lo que solicitaron la orden de venta judicial. Igualmente, adujeron que la peticionaria se beneficiaba económicamente al alquilar la propiedad y solicitaron el pago mensual de $1,000.00, como medida provisional.

El 17 de abril de 2024, la peticionaria presentó una *Moción por derecho propio*.[11] En esencia, planteó que se encontraba en gestiones de contratar una nueva representación legal y solicitó una prórroga para exponer su posición en cuanto a la solicitud de ejecución de sentencia hecha por las recurridas. Además, sostuvo que desde que las recurridas solicitaron la liquidación de la comunidad de bienes, les remitía mensualmente $1,000.00 y señaló que le solicitaban $1,500.00. Las recurridas negaron lo anterior y se allanaron a la solicitud de prórroga.[12]

Luego, la señora Pantoja Rabell, a través de su representación legal, presentó una *Moción en Oposición a Otra en Solicitud de Ejecución de Sentencia*.[13] En esta, negó el incumplimiento señalado y adujo que las recurridas estaban impedidas de reclamar las rentas del alquiler de la propiedad por cosa juzgada. Ello, por cuanto en la *Sentencia* emitida el 18 de abril de 2022, no se incluyó ni se hizo referencia alguna en cuanto al pago de las rentas.

---

[9] Apéndice XIV de la *Apelación*, págs. 34-35.
[10] Entrada núm. 59 en SUMAC.
[11] Entrada núm. 63 en SUMAC.
[12] Entrada núm. 64 en SUMAC.
[13] Entrada núm. 70 en SUMAC.

Evaluado lo anterior, el TPI emitió una *Orden* en la que concedió a las partes un término de treinta (30) días para cumplir con la *Sentencia*.[14] Sin embargo, el 11 de julio de 2024, les concedió un plazo adicional de veinte (20) días.[15]

Ese mismo día, la peticionaria presentó un *Escrito en Relación con Orden*.[16] En éste esgrimió que, entre las partes se habían cursado borradores de proyectos de estipulación para ser sometidos al tribunal. De igual forma, sostuvo que llevó a cabo todos los trámites correspondientes para obtener financiamiento para la compra de la propiedad, el cual no había sido posible por razones ajenas a su voluntad.

En su consecuencia, las partes presentaron una *Estipulación y Acuerdo de Transacción*.[17] En el referido documento, reafirmaron el acuerdo de que, dentro del término de noventa (90) días, la señora Pantoja Rabell adquiriría las participaciones de las recurridas en la propiedad. Sin embargo, esta vez pactaron que, en caso de que la peticionaria no pudiera adquirir la propiedad, las recurridas procederían a adquirir la participación de la peticionaria. Asimismo, que solicitarían la ejecución de la sentencia y un mandamiento para que proceda la venta de la participación de la peticionaria. El antedicho acuerdo fue acogido por el TPI el 16 de julio de 2024, mediante una *Resolución* notificada el 17 de julio de 2024.[18]

Así las cosas, el 11 de octubre de 2024, la señora Pantoja Rabell presentó una *Moción Solicitando Extensión de Término por Razones Válidas*.[19] En ésta solicitó una prórroga adicional para cumplir con los trámites dirigidos a la adquisición de la propiedad. Lo anterior, toda vez que, los procedimientos de financiamiento y el de una tasación promovida por el banco se habían dilatado por

---

[14] Entrada núm. 71 de SUMAC.
[15] Entrada núm. 72 de SUMAC.
[16] Apéndice XV de la *Apelación*, págs. 36-37.
[17] Apéndice XVI de la *Apelación*, págs. 38-39.
[18] Entrada núm. 76 de SUMAC.
[19] Apéndice XVII de la *Apelación*, págs. 40-51.

causas imputables a este y al Centro de Recaudaciones de Ingresos Municipales (CRIM). Además, acompañó su moción con unos correos electrónicos que cursó a la representación legal de las recurridas en las que, según aduce, se evidencia que estaban al tanto de las diligencias efectuadas, así como con comunicaciones electrónicas con el banco y la hoja de solicitud de servicios ante el CRIM para la nueva tasación.

El 22 de octubre de 2024, las recurridas presentaron una *Moci[ó]n en Cumplimiento de Orden*.[20] En ésta, expresaron estar de acuerdo con que se le concediera a la peticionaria un término adicional de cuarenta y cinco (45) días, contados a partir del 19 de octubre de 2024, para completar los trámites de la compraventa. En adición, haciendo referencia a uno de los correos electrónicos que le fueron cursados por la señora Pantoja Rabell, señalaron que el pago de contribuciones al CRIM no debía ser distribuido en partes iguales ya que ésta última había disfrutado las rentas de la propiedad, a pesar de que en el acuerdo se renunciaron los créditos por concepto de valor rentable.

Siendo así, el 22 de octubre de 2024, el TPI emitió una *Orden* en la que concedió un término final de sesenta (60) días para culminar el proceso de la adquisición de la propiedad y resolvió que las deudas del CRIM con fecha posterior a la *Sentencia* le correspondían a la peticionaria.[21] Asimismo, advirtió que el incumplimiento con el término antedicho supondría el dictamen de una orden para proceder con la ejecución de la sentencia.

Ante ello, la señora Pantoja Rabell presentó una *Solicitud de Reconsideración Parcial de Orden*.[22] Esbozó que en el CRIM le informaron que era necesaria la información personal de las recurridas, para agilizar los trámites toda vez que éstas aparecían

---

[20] Apéndice XVIII de la *Apelación*, págs. 52-53.
[21] Entrada núm. 80 de SUMAC. Notificada el 23 de octubre de 2024.
[22] Apéndice XIX de la *Apelación*, págs. 54-56.

como titulares de la propiedad. En adición a lo anterior, expuso un extracto de uno de los correos electrónicos cursados a la representación legal de las recurridas en el que se les informa sobre lo indicado en el CRIM. Por ello, atribuyó la incomunicación de las recurridas como parte de la causa del retraso en los trámites.

Asimismo, señaló que en la *Sentencia* del 18 de abril de 2022 no se vincula la ocupación de la propiedad con la responsabilidad del pago de la deuda en el CRIM. En adición, confirió las contribuciones adeudadas a un proceso para computar la retasación de las unidades en las que ella no residía. Ello, por cuanto el inmueble consta de tres unidades de vivienda. El referido proceso versó en que el CRIM computara la retención de las unidades que ella no estaba viviendo y, así, corrigiera los valores para expedir los recibos de cobro.

El 18 de marzo de 2025, las recurridas presentaron una *Moci[ó]n Solicitando Ejecuci[ó]n de Sentencia*[23] y, de conformidad con al acuerdo suscrito el 15 de julio de 2024, consignaron la suma de $33,333.33 en pago de la participación de la señora Pantoja Rabell.[24]

Ante ello, el 31 de marzo de 2025, la peticionaria presentó una *Oposición a Solicitud de Ejecución de Sentencia.*[25] Allí, arguyó que no correspondía la venta judicial por el precio de $100,000.00, acordado en la transacción, sino por el valor que reflejó la segunda tasación, que arrojó un valor de $510,000.00. Lo anterior, según adujo, procedía toda vez que el tipo mínimo para la venta tendría que responder a un valor factual y real. De lo contrario, se constituiría un enriquecimiento injusto. Por lo tanto, solicitó al TPI que tomara en consideración la antedicha tasación.

---

[23] Apéndice IV de la *Apelación*, págs. 8-9.
[24] Apéndice XXIV de la *Apelación*, págs. 131-132.
[25] Apéndice XXII de la *Apelación*, págs. 61-97.

El 10 de abril de 2025, las recurridas presentaron una *R[é]plica a Solicitud de Ejecuci[ó]n de Sentencia.*[26] Expusieron que, el precio por el que procedía la venta judicial del inmueble correspondía al que fue pactado en el acuerdo de transacción, el cual no era susceptible de ser apelado o revisado por constituir cosa juzgada. Asimismo, argumentó que, en el referido acuerdo, renunciaron a reclamar su parte en las rentas devengadas y la tasación fue costeada por ambas partes, por lo que no hubo dolo ni vicio en el consentimiento del acuerdo.

Ese mismo día, el TPI emitió una *Orden* en la que, conforme al acuerdo de transacción suscrito, declaró Ha Lugar la ejecución de sentencia solicitada y ordenó a las recurridas la consignación de los fondos correspondientes a la participación de la peticionaria.[27]

Ante ello, la peticionaria presentó una *Solicitud de Reconsideración.*[28] Allí, se reafirmó en cuanto a que dejar intacto el precio de la venta judicial y no considerar la nueva tasación supondrían un enriquecimiento injusto, una ventaja patrimonial desproporcionada y una excesiva onerosidad sobreviniente. Sin embargo, mediante una *Orden* emitida y notificada el 24 de abril de 2025, el TPI declaró "no ha lugar" la solicitud de reconsideración.[29]

Inconforme, la señora Pantoja Rabell acude ante nos mediante el recurso que nos ocupa y le imputa al foro primario el siguiente señalamiento de error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NEGARSE A LLEVAR A EFECTO UNA REVISIÓN DE LA ESTIPULACIÓN ENTRE LAS PARTES POR HABER SURGIDO UN ELEMENTO QUE ALTERABA RADICALMENTE LOS TÉRMINOS DEL ACUERDO ORIGINAL, PROPICIANDO UNA INJUSTICIA E INEQUIDAD INCALIFICABLES; TODO ELLO A CONTRAPELO DE LA JURISPRUDENCIA DE NUESTRO MÁS ALTO FORO SOBRE EL PARTICULAR.

---

[26] Apéndice XXIII de la *Apelación*, págs. 98-130.
[27] Apéndice III de la *Apelación*, págs. 6-7. Notificada el 11 de abril de 2025.
[28] Apéndice II de la *Apelación*, págs. 2-5.
[29] Apéndice I de la *Apelación*, pág. 1.

En reacción, las recurridas comparecieron mediante una *Oposición a la Expedici[ó]n del Auto de Certiorari*. En síntesis, sostienen que la peticionaria intenta litigar nuevamente un caso que fue objeto de transacción y en el que fue dictada una sentencia cuya revisión fue renunciada voluntariamente.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A. Expedición del recurso de *certiorari* post sentencia**

Es norma reiterada que una resolución u orden interlocutoria, contrario a una sentencia, es revisable ante el Tribunal de Apelaciones, mediante auto de *certiorari*. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 847 (2023). El recurso de *certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 52.1; *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez, supra*.

Las Reglas de Procedimiento Civil establecen que, el Tribunal de Apelaciones expedirá el recurso de *certiorari*, cuando el peticionario recurra de una resolución u orden sobre remedios provisionales, *injunctions* o de la denegatoria de mociones dispositivas. *Torres González v. Zaragoza Meléndez, supra*. En ese sentido, el auto de *certiorari* es limitado y excluye aquellas determinaciones interlocutorias que pueden esperar hasta la determinación final del tribunal para formar parte de un recurso de apelación. *800 Ponce de León v. AIG*, 205 DPR 163 (2020). El delimitar la revisión, a instancias específicas, tiene como propósito evitar la dilación que causaría la revisión judicial de controversias

que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp., et al.*, 202 DPR 478 (2019).

Ahora bien, la Regla 52.1 de Procedimiento Civil de 2009, *supra*, establece excepciones que permiten la revisión de: (1) decisiones sobre admisibilidad de testigos de hechos o peritos esenciales; (2) asuntos relativos a privilegios evidenciarios; (3) anotaciones de rebeldía; (4) casos de relaciones de familia; (5) asuntos de interés público y (6) situaciones en la cuales esperar a la apelación constituye un fracaso irremediable a la justicia. *800 Ponce de León v. AIG, supra.*

Como puede observarse, la Regla citada no contempla los **dictámenes posteriores a la sentencia**, por lo que, al determinar si procede la expedición de una petición de *certiorari*, el Tribunal de Apelaciones viene obligado a acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 339 (2012). De imponerse las limitaciones de la Regla 52.1, *supra*, a la revisión de dictámenes post sentencia, tales determinaciones inevitablemente quedarían sin posibilidad alguna de revisión apelativa. *BPPR v. SLG Gómez-López, supra.* En tal sentido, es preciso enfatizar que, si bien el auto de *certiorari* es un mecanismo procesal discrecional, dicha discreción del foro revisor no debe hacer abstracción del resto del derecho. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 711 (2019).

Cabe destacar que, el examen que hace este Tribunal, previo a expedir un *certiorari*, no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra*; véase, además, *Mun. de Caguas v. JRO Construction, supra.* A fin de que esta Curia pueda ejercer su discreción de manera prudente, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, R. 40, establece los criterios que deberán ser considerados, al determinar si procede o

no expedir un auto de *certiorari*. Los referidos criterios establecidos en la citada Regla 40 son los siguientes:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Como ya indicamos, los criterios antes transcritos nos sirven de guía para poder determinar si procede o no intervenir en el caso, en la etapa del procedimiento en que este se encuentra. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). De esta manera, el foro apelativo deberá ejercer su facultad revisora solamente en aquellos casos en que se demuestre que el dictamen emitido por el foro de instancia es arbitrario o constituye un exceso de discreción. *BPPR v. SLG Gómez-López, supra.*

**III.**

En el presente caso, la señora Pantoja Rabell solicita nuestra intervención sobre el dictamen del foro primario y dejar sin efecto una orden para ejecutar una sentencia que resultó de un acuerdo transaccional. Aduce que, de lo contrario, se constituiría un enriquecimiento injusto toda vez que la sentencia da paso a la venta judicial de un inmueble por el valor de tasación que fue estipulado, el cual es significativamente menor al que resultó de una segunda tasación.

Hemos analizado el expediente del caso de epígrafe, y considerando la normativa jurídica discutida respecto a la expedición de los autos de *certiorari* atinentes a los asuntos post sentencia, resolvemos que no corresponde ejercer nuestra discreción para expedir y variar la determinación del foro primario, en esta etapa de los procedimientos.

Conforme adelantamos, solo procede variar el dictamen del TPI si se desprende prejuicio, parcialidad, error manifiesto o abuso en el ejercicio de su discreción. Al ejercer nuestro rol revisor no identificamos elemento que nos mueva a ejercer nuestra función discrecional y expedir el auto solicitado. Los peticionarios no han acreditado ninguna de las instancias detalladas en la Regla 40 de nuestro Reglamento, *supra*, que justifique acceder a lo que solicita, por lo que resolvemos abstenernos de intervenir con el dictamen recurrido. En adición, es preciso resaltar que, tomando en consideración la totalidad del cuadro factico reseñado, colegimos que, la peticionaria no ha señalado ninguna circunstancia conforme al tracto procesal correspondiente a la causa, que podría constituir un fracaso irremediable a la justicia.

Consiguientemente, procede abstenernos de intervenir en el presente recurso según presentado.

**IV.**

Por los fundamentos que anteceden, denegamos la expedición del auto de *certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones